Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 3495 | **DATE** | 6/14/2001 |
| **CASE TITLE** | Mulvihill vs. United States of America et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Ruling held. **<u>ENTER MEMORANDUM OPINION:</u>** We grant the United States' motion (Doc 12-1) for summary judgment.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JUN 1 5 2001 | |
| | Notified counsel by telephone. | | date docketed | 18 |
| ✓ | Docketing to mail notices. | ED-7 FILED FOR DOCKETING 01 JUN 14 PM 1: 38 | docketing deputy initials | |
| ✓ | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| SCT | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

WALTER MULVIHILL,                )
                                 )
                  Plaintiff,     )
                                 )
vs.                              )    No. 00 C 3495
                                 )
UNITED STATES OF AMERICA,        )
                                 )
                  Defendant.     )

DOCKETED
JUN 1 5 2001

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

Before the Court is the Motion for Summary Judgment of the Defendant United States of America. For the following reasons, we grant the motion.

### BACKGROUND

Early in the morning of January 14, 1999, Plaintiff Walter Mulvihill ("Mulvihill") drove from his home to the United States Post Office in Glenview, Illinois. Mulvihill parked in front of the Post Office and alighted from his vehicle. He walked along the sidewalk toward the Post Office, then stepped up to a landing. The landing, which leads to the front door of the Post Office, is elevated approximately three and one-half inches higher than the sidewalk. Each year the Post Office paints

a yellow stripe along the edge of the landing to warn people of the change in elevation. A street light provides incidental light to the landing but does not illuminate where the landing meets the sidewalk.

At approximately 6:45 that morning, Mulvihill exited the Post Office. He walked east along the landing, then as he reached the edge he turned north toward the sidewalk. Due to the darkness at this early hour, Mulvihill could not see the yellow stripe at the edge of the elevated platform. Also, slush had accumulated on the landing and sidewalk, obscuring the change in elevation. Mulvihill stepped in the slush, incorrectly believing that it was still part of the landing. His foot gave way, and he slipped and fell. Mulvihill brought suit against the United States of America (the "United States") alleging negligence.

## LEGAL STANDARD

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986). In seeking a grant of summary judgment the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp.

v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." Celotex Corp., 477 U.S. at 325, 106 S.Ct. at 2554. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); rather, "[a] genuine issue exists when the evidence is such that a reasonable jury could find for the non-movant," Buscaglia v. United States, 25 F.3d 530, 534 (7th Cir.1994). When reviewing the record we must draw all reasonable inferences in favor of the non-movant; however, "we are not required to draw every conceivable inference from the record--only those inferences that are reasonable." Bank Leumi Le-Israel, B.M. v. Lee, 928 F.2d 232, 236 (7th Cir.1991).

## DISCUSSION

Under the Federal Tort Claims Act, the United States' liability is determined in accordance with the law of the state where the alleged act or omission took place. See

28 U.S.C. § 1346(b); Hylin v. United States, 715 F.2d 1206, 1210 (7th Cir. 1983) (vacated on other grounds, 469 U.S. 807, 807 (1984)). Because the United States' allegedly negligent acts occurred in Illinois, Illinois law governs Mulvihill's complaint.

In order to prevail on a negligence claim against the United States, the plaintiff must prove that the United States owed a duty of care, that the United States' breach of its duty proximately caused the plaintiff's injury, and that the United States had actual or constructive notice of the allegedly unsafe condition in time to correct it. See Rose v. United States, 929 F. Supp. 305, 308-09 (N.D. Ill. 1996). In Illinois, owners of premises generally owe business invitees a duty to furnish a reasonably safe means of ingress and egress to the premises. See Swett v. Village of Algonquin, 523 N.E.2d 594, 600 (Ill. App. 1988) (citing McDonald v. Frontier Lanes, Inc., 272 N.E.2d 369, 372 (Ill. App. 1971), Cooley v. Maske, 196 N.E.2d 396, 396 (Ill. App. 1964)). When the owner prescribes a means of ingress and egress for invitees, the owner has a duty to illuminate properly, give adequate warning of, or cause to be repaired any known, dangerous conditions. See id. (citing Seipp v. Chicago Transit Auth., 299 N.E.2d 330, 335 (Ill. App. 1973)). The duty to illuminate lies for latent or concealed perils of which the owner has knowledge and the invitee does not. See id. at 601.

Liability of a business owner may not be predicated on falls resulting from natural accumulations of ice or snow. See Newcomm v. Jul, 273 N.E.2d 699, 700 (Ill.

App. 1971) (citing Kelly v. Huyvaert, 56 N.E.2d 638, 640-41 (Ill. App. 1944)). Accordingly, the business owner is not required to warn invitees of the presence of natural accumulations of ice or snow. See id. (stating that "the duty of warning against a particular condition or hazard co-exists with the corresponding liability for the consequences or hazards of the condition if no appropriate warning is given").

Mulvihill's claim must fail under these guiding principles because he has failed to create a genuine issue of material fact as to the existence of a duty on the part of the United States. First, he has failed to set forth facts indicating that the slush accumulated unnaturally and gave rise to a duty to protect against it. As an alternative, Mulvihill has not created a genuine issue of material fact as to the existence of any other known, dangerous condition or peril that would trigger a duty to illuminate. Finally, Mulvihill had prior knowledge of the height differential between the walkway and the landing. All of these points are fatal to his claim.

First, the facts on the record before us show that the slush accumulated from natural causes which would relieve the United States from any duty to warn of it. Mulvihill testified at his deposition that snow had fallen that morning and the previous night. However, he has asserted no facts establishing, or even suggesting, that the slush accumulated unnaturally. Indeed, in his brief Mulvihill abandons his theory of liability predicated on the existence of the slush as a proximate cause of his injury.

Instead, in an effort to avoid the consequences of the "natural accumulation" rule, Mulvihill argues in his brief that his injury resulted from the United States' "failure to provide adequate lighting of the area and otherwise fail to adequately warn about the dangers of the step." (Pl. Resp. Brief at 1.) An action premised on inadequate lighting can lie only if a dangerous condition or peril exists. See Newcomm v. Jul, 273 N.E.2d 699, 701-02 (Ill. App. 1971). In Newcomm, the plaintiff slipped and fell on an icy sidewalk as he carried a small child from a restaurant to the parking lot. See id. at 700. Plaintiff's original complaint alleged that defendant provided inadequate lighting of the area and permitted an unnatural accumulation of ice or snow on the premises, but the amended complaint presented a sole issue of whether the lighting was sufficient. See id. Reversing the trial court's judgment for the plaintiff, the court of appeals concluded that the duty of warning against a particular condition or hazard co-exists with the corresponding liability for the consequences or hazards of the condition if no appropriate warning is given. See id. at 702. Because no liability lies for injuries resulting from the natural accumulation of snow or ice, the restaurant owner had no duty to warn by illuminating the icy patch of the parking lot. See id. at 701.

Resisting the effect of Newcomm, Mulvihill points to the outlier case of Weber v. Chen Enterprises. 540 N.E.2d 957 (Ill. App. 1989). In Weber, the plaintiff allegedly

sustained injuries while traversing the defendant restaurant's parking lot following dinner. See id. at 958. Plaintiff alleged that the proximate cause of her injuries was inadequate lighting which caused her to slip and fall on the natural accumulation of ice or snow in the parking lot. See id. The trial court granted the restaurant's motion for summary judgment based on Newcomm and Walker v. Chicago Transit Auth., 4165 N.E.2d 10 (Ill. App. 1980). The court of appeals reversed the decision and remanded the case, however, finding that the plaintiff was entitled to have a jury determine the adequacy of the existing light in the parking lot. See id. In so holding, the court stated that "[t]he existence of allegedly inadequate illumination, which [sic] if substantiated as a proximate cause of her fall, removes defendant from the safeguard of claiming that the law does not afford the plaintiff a remedy for injuries occasioned as a consequence of slipping on a natural accumulation of ice or snow." Id. at 958-59.

Although this language sounds favorable to Mulvihill, it is of little import to the case at bar. First, the case is of questionable precedential value. The Illinois Supreme Court has expressly affirmed the principles set forth in Newcomm -- those same principles that the Weber court rejects by divorcing the natural accumulation rule from the illumination inquiry. See Lansing v. County of McLean, 372 N.E.2d 822, 827-28 (Ill. 1978) (citing and endorsing Newcomm's holding that "[t]he duty of warning against a particular condition or hazard coexists with the corresponding liability for the

consequences or hazards of the condition if no appropriate warning is given"). Conversely, the Weber opinion has received some criticism. See Carrizales v. Rheem Mfg., 589 N.E.2d 569, 577 (Ill. App. 1991) (stating that "[t]he Weber court is critical of Newcomm and ignores the Supreme Court's approval of [Newcomm's] principles in Lansing"). Second, as a factual matter, the defendant in Weber voluntarily undertook a duty to light the parking lot, so the parties disputed only the breach of duty element and not the existence of the duty. See Weber, 540 N.E.2d at 960. In the case at bar, by contrast, whether a duty exists is a hotly contested issue. In light of these considerations, we find Weber to be of little guidance in the instant matter.

If under Newcomm the United States had no duty to illuminate the natural accumulation of slush, did it otherwise have a duty to illuminate the step itself? Only if the step comprised a dangerous condition. Illinois cases have elaborated on what constitutes a dangerous condition. In Cooley v. Maske, the court of appeals found a dangerous condition where the plaintiff injured himself on a defective portion of a sidewalk that served as the sole means of ingress and egress to a tavern. See 196 N.E.2d at 396. The roots of a tree had heaved up a portion of the sidewalk. See id. at 396-97. Likewise, in McDonald v. Frontier Lanes, Inc., the court of appeals identified a dangerous condition where a plaintiff had stepped onto a parkway and fallen into a hole twelve inches deep and two feet wide. See 272 N.E.2d at 372, 373. Moreover,

in <u>Kittle v. Liss</u>, the court of appeals deemed a series of five unlit steps a dangerous condition where the plaintiff fell while exiting a tavern. See 439 N.E.2d 972, 974 (Ill. App. 1982).

In the case at bar, Mulvihill attempts to characterize the elevated landing as a dangerous condition. The landing is elevated a mere three and one-half inches above the adjoining sidewalk. This condition is not the type that has led Illinois courts to find a duty on the part of the landowner. Unlike the aforementioned instances, this case features no unusual facts such as unwieldy tree roots or displaced bricks that would trigger an owner's duty to warn. Nor is this case analogous to <u>Kittle</u>, where the dangerous condition consisted of a series of steps. See 439 N.E.2d at 974. Rather, the instant condition is a modest elevation of less than four inches -- a "step" only in the most generous sense of the word, and only a single step at that. It does not pose a risk of danger similar to the upheaved sidewalk in <u>Cooley</u>, the displaced bricks in <u>McDonald</u>, or the series of steps in <u>Kittle</u>.

<u>Swett v. Village of Algonquin</u> supports this conclusion. See 523 N.E.2d 594 (Ill. App. 1988). In that case, the plaintiff sued a restaurant and the city after her husband and mother were killed crossing the roadway separating the restaurant from its parking lot. See <u>id.</u> at 596. Plaintiff asserted that the "moving traffic on Route 31" comprised a known, dangerous condition against which the defendant had a duty to

protect citizens. Id. at 601. Both the trial and appellate courts rejected this proposition, however, because the mere motion of traffic on a business route did not constitute a dangerous condition that triggers a landowner's duty to protect. See id. Moreover, the court pointed out that plaintiffs must have known of the "ordinary danger of crossing such a roadway." Id.

Similar reasoning applies to Mulvihill's case. Just as people encounter traffic on a business route on a regular basis, so too must they navigate small elevations between walking surfaces. Neither example rises to the level of a dangerous or perilous condition. Furthermore, Mulvihill recognized the "ordinary danger" posed by the modest elevation. At his deposition, he conceded that he had traversed the area on numerous occasions:

> Q: And when you were walking out of the Post Office before you fell, were you looking where you stepped?
>
> A: Yes, sir.
>
> Q: And in fact, you'd gone past that area before, as you testified earlier, so did you know that there was going to be an elevation change?
>
> A: Yes, sir.
>
> [. . .]
>
> Q: Well, you'd crossed the elevation change in the past because you'd gone to and from the Post Office on an average of let's say three times a week, correct?

A: Yes, sir.

Q: And in fact, you'd crossed the elevation change in good weather, poor weather, snowy weather, rainy weather. Correct?

A: Yes, sir.

(Mulvihill Dep. pp. 28-29.) Because Mulvihill was familiar with the area in question, he cannot be said to have been unaware of the ordinary danger involved in navigating the step. See Swett, 523 N.E.2d at 601 (stating that plaintiffs "cannot be said to have been unaware of the ordinary danger of crossing such a roadway").

In sum, Mulvihill's claim cannot go forward because he has failed to raise a genuine issue of material fact as to whether the United States had a duty to illuminate the area surrounding the elevated landing. Because the undisputed facts indicate that the slush had accumulated naturally, the United States had no duty to warn Mulvihill of the accumulation. Nor does the slight elevation of the landing constitute a dangerous condition that would trigger a duty on the part of the United States. Moreover, even if the step were a dangerous condition, Mulvihill admitted that he had knowledge of the elevation, thus defeating the assertion that the United States had a duty to warn him of it. Accordingly, his complaint cannot survive the United States' motion for summary judgment.

## CONCLUSION

For the foregoing reasons, we grant the United States' motion for summary judgment.

*Charles P. Kocoras*
Charles P. Kocoras
United States District Judge

Dated:  June 14, 2001